UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CHERYL L. KOBLESKI, Individually and on Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>CITIGROUP INC., CITICORP, and CITIBANK (SOUTH DAKOTA), N.A., )<br><br>Defendants. ) | Case No. 10-CV-868 |

## BRIEF OF DEFENDANTS CITIGROUP INC., CITICORP AND CITIBANK (SOUTH DAKOTA), N.A. IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY ACTION

TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................................1

II.   FACTUAL BACKGROUND..................................................................................1
      A.    The Parties ...................................................................................................1
      B.    Kobleski's Account And The Card Agreement ...........................................1
      C.    The Arbitration Agreement .........................................................................2
      D.    Credit Protector...........................................................................................6

III.  ARGUMENT ...........................................................................................................6
      A.    Because A Valid Arbitration Agreement Exists Under The FAA And
            South Dakota Law, Kobleski Must Arbitrate Her Claims Against
            Defendants. ..................................................................................................6
            1.    The Choice-Of-Law Provision Must Be Enforced. ...........................9
                  a)    The Arbitration Agreement Is Not Contrary To A
                        Fundamental Wisconsin Public Policy. ..............................11
                  b)    Wisconsin Does Not Have A Materially Greater Interest
                        Than South Dakota In Applying Its Law. ...........................14
                  c)    South Dakota Law Determines The Arbitration
                        Agreement's Validity..........................................................15
            2.    The Complaint's Claims Are Within The Arbitration Agreement's
                  Scope..............................................................................................16
      B.    The Arbitrator Must Hear Kobleski's Claims On An Individual Basis................18
      C.    The Court Should Stay The Action Pending Arbitration On An Individual
            Basis............................................................................................................19
      D.    Alternatively, This Court Properly May Stay This Case Pending Action
            By The Supreme Court. ..............................................................................19

IV.   CONCLUSION......................................................................................................21

-ii-

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Adkins v. Labor Ready, Inc.,
  303 F.3d 496 (4th Cir. 2002) ....................................................................................8

Allied-Bruce Terminix Cos. v. Dobson,
  513 U.S. 265, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995)........................................6

American Express Co. v. Italian Colors Restaurant,
  __U.S.__, 130 S. Ct. 2401, 176 L. Ed. 2d 920, 2010 WL 1740528 (May 3, 2010) ...............18

AT&T Mobility LLC v. Concepcion,
  No. 09-893, 130 S. Ct. 3322, 2010 WL 303962 (May 24, 2010) ......................................1, 19

AT&T Techs., Inc. v. Commc'ns Workers of Am.,
  475 U.S. 643, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)........................................15

Autotrol Corp. v. Continental Water Sys. Corp.,
  694 F. Supp. 603 (E.D. Wis. 1988)..........................................................................10

Barker v. Citibank ad (South Dakota), N.A.,
  No. A:03CA-130JN, Slip. Op., 2003 WL 25943008 (W.D. Tex. May 30, 2003)....................9

Battle v. Nissan Motor Acceptance Corp.,
  No. 05-C-0669, 2007 WL 1095681 (E.D. Wis. Mar. 9, 2006) ............................................8, 17

Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH,
  585 F.2d 39 (3d Cir. 1978)........................................................................................15

Bess v. Check Express,
  294 F.3d 1298 (11th Cir. 2002) .................................................................................7

Bruesewitz v. Wolpoff & Abramson, LLP,
  No. 05-C-542-S, 2005 WL 3002609 (W.D. Wis. Nov. 8, 2005)........................................8, 12

Bush v. National Sch. Studios, Inc.,
  139 Wis.2d 635, 407 N.W.2d 883 (1987).................................................................10

Carney v. Verizon Wireless Telecom, Inc.,
  No. 09-cv-1854 DMS (AJBx), 2010 WL 3058106 (S.D. Cal Aug. 2, 2010) .........................20

Carter v. Countrywide Credit Indus., Inc.,
  362 F.3d 294 (5th Cir. 2004) .....................................................................................8

LA 51336261
QB\11885989.1

Caudle v. Am. Arbitration Ass'n,
    230 F.3d 920 (7th Cir. 2000) ........................................................................9

Citibank (South Dakota), N.A. v. Walker,
    No. A117770, 2008 WL 4175125 (Cal. App. Ct. Sept. 11, 2008) ............................9

Citibank USA v. Howard,
    No. 4:02CV64LN, 2002 WL 34573997 (S.D. Miss. Aug. 30, 2002) ........................9

City of Hot Springs v. Gunderson's, Inc.,
    322 N.W.2d 8 (S.D. 1982) ........................................................................14

Coady v. Cross Country Bank,
    299 Wis.2d 420, 746 N.W.2d 732 (Wis. Ct. App. 2007)......................................12, 13

Cottonwood Fin., LTD. v. Estes,
    325 Wis.2d 749, 784 N.W.2d 726 (Wis. Ct. App. 2010).....................................11, 12

Cty. Materials Corp. v. Allan Block Corp.,
    431 F. Supp. 2d 937 (W.D. Wis. 2006) .........................................................10

Dean Witter Reynolds, Inc. v. Byrd,
    470 U.S. 213, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985).........................................7

Deputy v. Lehman Bros. Inc.,
    No. 02-C-0718, 2004 WL 3770574 (E.D. Wis. Aug. 16, 2004)...............................8

Diesel Service Co. v. Ambac Intern. Corp.,
    No. 90-C-142-C, 1990 WL 358306 (W.D. Wis. Dec. 20, 1990)...........................10

Dinsmore v. Piper Jaffray, Inc.,
    593 N.W.2d 41, 1999 SD 56 (S.D. 1999) ......................................................9, 14

Dumanis v. Citibank (South Dakota), N.A.,
    No. 6:07-cv-6070 (CJS), 2007 WL 3253975 (W.D.N.Y. Nov. 2, 2007)...................9

Eaves-Leonos v. Assurant, Inc.,
    3:07-CV-18-S, 2008 WL 80173 (W.D. Ky. Jan. 8, 2008)....................................15

Edelist v. MBNA Am. Bank,
    790 A.2d 1249 (Del. Super. Ct. 2001) ..........................................................13

EEOC v. Waffle House, Inc.,
    534 U.S. 279, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002)....................................8, 17

First Options of Chicago, Inc. v. Kaplan,
    514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)......................................9

-iv-

First Wisconsin Nat'l Bank of Madison v. Nicolaou,
    85 Wis.2d 393, 270 N.W.2d 582 (Wis. Ct. App. 1978).........................................10

Franchise Sys., Inc. v. Grahek,
    No. 03-C-276-C, 2003 WL 23162309 (W.D. Wis. Sept. 3, 2003) ...........................10

French v. Wachovia Bank,
    No. 06-C-869, 2007 WL 895820 (E.D. Wis. Mar. 21, 2007) ...................................7

Gay v. CreditInform,
    511 F.3d 369 (3d Cir. 2007)..............................................................................8, 9

Green Tree Fin. Corp.-Ala. v. Randolph,
    531 U.S. 79, 121 S Ct. 513, 148 L. Ed. 2d 373 (2000)...........................................8

Hasbro, Inc. v. Catalyst USA, Inc.,
    367 F.3d 689 (7th Cir. 2004) ............................................................................17

Hawkins v. Aid Ass'n for Lutherans,
    338 F.3d 801 (7th Cir. 2003) ...............................................................................8

Hill v. Equitable Trust Co.,
    562 F. Supp. 1324 (D. Del. 1983).......................................................................13

Howsam v. Dean Witter Reynolds, Inc.,
    537 U.S. 79, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002).....................................8, 17

Iberia Credit Bureau, Inc. v. Cingular Wireless LLC,
    379 F.3d 159 (5th Cir. 2004) ............................................................................8, 9

In re Cotton Yarn Antitrust Litig.,
    505 F.3d 274 (4th Cir. 2007) ...............................................................................8

Johnson v. John Deere Co.,
    306 N.W.2d 231 (S.D. 1981) .............................................................................11

Johnson v. West Suburban Bank,
    225 F.3d 366 (3d Cir. 2000)................................................................................8

Kaltwasser v. Cingular Wireless LLC,
    No. C 07-00411 JF (PVT), 2010 WL 2557379 (N.D. Cal. June 21, 2010) ..........................20

Kemp v. Fisher,
    89 Wis.2d 94, 277 N.W.2d 859 (Wis. 1979) .......................................................11

Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.,
    174 F.3d 907 (7th Cir. 1999) ...............................................................................8

-v-

Kroll v. Doctor's Assocs., Inc.,
    3 F.3d 1167 (7th Cir. 1993) ..................................................................18

L.R. Foy Constr. Co. v. Spearfish School District,
    341 N.W.2d 383 (S.D. 1983) (Henderson, J., specially concurring) ......................14

Landis v. North Am., Inc.,
    299 U.S. 248, 57 S. Ct. 163, 81 L. Ed. 153 (1936)................................................19

Livingston v. Assocs. Fin., Inc.,
    339 F.3d 553 (7th Cir. 2003) ....................................................................8

Lloyd v. MBNA Am. Bank, N.A.,
    No. 01-1752, 27 Fed. App'x 82, 2002 WL 21932 (3d Cir. Jan. 7, 2002)...............13

Mackey v. MBNA Am. Bank, N.A.,
    343 F. Supp. 2d 966 (W.D. Wash. 2004).............................................................13

Mastrobuono v. Shearson Lehman Hutton, Inc.,
    514 U.S. 52, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995)........................................7

McArdle v. AT&T Mobility LLC,
    No. C 09-1117 CW, 2010 WL 2867305 (N.D. Cal. July 20, 2010) ......................20

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
    473 U.S. 614, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)......................................7

Oldroyd v. Elmira Savs. Bank, FSB,
    134 F.3d 72 (2d Cir. 1998).....................................................................16

Omni Tech Corp. v. MPC Solutions Sales, LLC,
    432 F.3d 797 (7th Cir. 2005) ...................................................................17

Pleasants v. Am. Express Co.,
    541 F.3d 853 (8th Cir. 2008) .....................................................................9

Prima Paint Corp. v. Flood & Conklin Mfg. Co.,
    388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967)......................................6

Rent-A-Center, West, Inc. v. Jackson,
    ___ U.S. ___, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (Jun. 21, 2010) ......................18

Rossi Fine Jewelers, Inc. v. Gunderson,
    648 N.W.2d 812 (S.D. 2002) .................................................................14

Sesto v. Nat'l Fin. Sys., Inc.,
    Case No. 04 C 7768, 2005 WL 6519430 (N.D. Ill. Apr. 25, 2005)..........................9

-vi-

Seus v. John Nuveen & Co., Inc.,
      146 F.3d 175 (3d Cir. 1998)..................................................................18

Shearson/American Express, Inc. v. McMahon,
      482 U.S. 220, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987)..........................6

Snowden v. CheckPoint Check Cashing,
      290 F.3d 631 (4th Cir. 2002) ...................................................................8

Southland Corp. v. Keating,
      465 U.S. 1, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984)..................................17

Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.,
      __ U.S. __, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (Apr. 27, 2010)...............7, 8, 17, 18

Tanner v. Jupiter Realty Corp.,
      433 F. 3d 913 (7th Cir. 2006) .................................................................10

Taylor v. Citibank USA, N.A.,
      292 F. Supp. 2d 1333 (M.D. Ala. 2003) ...................................................9

Tinder v. Pinkerton Security,
      305 F.3d 728 (7th Cir. 2002) ..................................................................15

Tjeerdsma v. Global Steel Bldgs., Inc.,
      466 N.W.2d 643 (S.D. 1991) ..................................................................14

Ventura v. 1st Financial Bank USA,
      No. C 03-4515 JF (RS), 2005 WL 2406029 (N.D. Ca. Sept. 29, 2005) ...................13

Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,
      489 U.S. 468, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989)...................7, 17

Wisconsin Auto Title Loans, Inc. v. Jones,
      290 Wis.2d 514 (Wis. 2006) ...................................................................12

Zurich Am. Ins. Co. v. Watts Indus., Inc.,
      417 F.3d 682 (7th Cir. 2005) ....................................................................8

Zurich Am. Ins. v. Watts Indus.,
      466 F.3d 577 (7th Cir. 2006) ....................................................................8

**STATUTES**

9 U.S.C. § 2.....................................................................................................6

9 U.S.C. § 3...................................................................................................18

-vii-

9 U.S.C. § 4 .................................................................................................................8

S.D. Codified Laws § 51A-12-12 ...........................................................................2, 13

S.D. Codified Laws § 54-11-9 ................................................................................2, 15

S.D. Codified Laws § 54-11-10 ...................................................................................2

**OTHER AUTHORITIES**

Restatement (Second) Conflict of Laws § 6, cmt. d. ...................................................13

Restatement (Second), Conflict of Laws § 187 .....................................................10, 13

LA 51336261
QB\11885989.1

# I.  INTRODUCTION

Defendants Citigroup Inc., Citicorp and Citibank (South Dakota), N.A. ("Citibank") (together, "Defendants"), hereby move to enforce the binding arbitration agreement that governs all claims related to the credit card account issued to plaintiff Cheryl Kobleski ("Kobleski"), including her claims pertaining to the optional Credit Protector benefit ("Credit Protector"). Pursuant to the arbitration agreement's terms, Kobleski must arbitrate her claims here on an individual (i.e., non-class, non-consolidated) basis.  The arbitration agreement is valid and enforceable under the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), and South Dakota law, which governs Kobleski's credit card agreement.  Kobleski's claims are within the arbitration agreement's broad scope.  Accordingly, the Court should stay this action in favor of arbitration.  In the alternative, even if the Court is not inclined to order arbitration at this time, it should at a minimum stay the case until the United States Supreme Court decides AT&T Mobility LLC v. Concepcion, No. 09-893, 130, S. Ct. 3322, 2010 WL 303962 (May 24, 2010).

# II.  FACTUAL BACKGROUND

## A.  The Parties

Citibank (South Dakota), N.A. ("Citibank"), a national bank located in South Dakota, is the issuer of Kobleski's Citibank Diamond Preferred credit card account (the "Account"), as well as the provider of Credit Protector.  Complaint, ¶¶ 1, 24, 61, 62, see Declaration of Cathleen A. Walters ("Walters Decl."), ¶ 4.  Citibank is a subsidiary of Citigroup Inc., a publicly-traded holding company that does not issue credit card accounts.  Id., ¶ 3.  Citicorp also is a subsidiary of Citigroup and does not issue credit card accounts.  Id.  Both Citigroup and Citicorp are Delaware corporations located in New York.  Complaint, ¶¶ 22-23.  Kobleski allegedly is a Waukesha County, Wisconsin resident.  Complaint, ¶ 21.

## B.  Kobleski's Account And The Card Agreement

Like any other credit card account, Kobleski's Account is subject to written terms and conditions contained in a Card Agreement, as amended from time to time.  Walters Decl., ¶ 5.

1

Citibank sent Kobleski a Card Agreement when she opened the Account in June 2009, after which Kobleski used and made charges on the Account. Id. ¶¶ 5, 6 & Exs. 1, 2. South Dakota, by statute, mandates that its law apply to the relationship between banks located in South Dakota and their cardholders.[1] Consistent with mandatory South Dakota law, the Card Agreement for the Account contains the following choice-of-law provision:

> **Governing law.** Federal law and the law of South Dakota, where we are located, govern the terms and enforcement of this Agreement.

Id., Ex. 1 at 14. By using her Account, Kobleski assented to the Card Agreement and agreed to comply with its terms. This offer and acceptance procedure also is consistent with express South Dakota law, which provides that the "use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer with reference to any accepted credit card, and any charges made with the authorization of the primary card holder." S.D. Codified Laws § 54-11-9; see also S.D. Codified Laws § 54-11-10 (regarding modification of credit card agreements).

### C. The Arbitration Agreement

Importantly here, the Card Agreement contains an arbitration agreement requiring the parties to resolve their disputes by binding arbitration, pursuant to the FAA. Id., Ex. 1 at 10-14. The Arbitration Agreement requires arbitration on an individual, non-class and non-consolidated basis:

> ***PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE***

---

[1] S.D. Codified Laws § 51A-12-12 ("A revolving loan account arrangement between a bank located in the state of South Dakota and a debtor shall be governed by the laws of the state of South Dakota.").

LA 51336261
QB\11885989.1

**SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**

. . .

Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

. . .

**Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

Id., Ex. 1 at 10-11, 13. The Arbitration Agreement makes clear that Citigroup Inc., Citicorp and Citibank all may invoke arbitration.

**Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

. . .

[A]pplicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

Id., Ex. 1 at 11, 13 (emphasis added). The Arbitration Agreement is extremely broad in its scope, and plainly encompasses Kobleski's claims here.

**Claims Covered:**
**What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this

3

arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims . . . .

Broadest interpretation. Any questions about whether Claims are Subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

Id., Ex. 1 at 11. The Arbitration Agreement preserves remedies and limitations periods available under applicable law:

**What procedures and law are applicable in arbitration?** A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

4

Id., Ex. 1 at 12-13.  Notably, the Arbitration Agreement preserves Kobleski's right to litigate her claims in small claims court.  Walters Decl., Ex. 1 at 12.  The Arbitration Agreement also favorably allocates costs:

> **Who pays?**  Whoever files the arbitration pays the initial filing fee.  If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm.  If you have paid the initial filing fee and you prevail, we will reimburse you for that fee.  If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing.  All other fees will be allocated as provided by the rules of the arbitration firm and applicable law.  However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so.  Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

Id., Ex. 1 at 13.  Furthermore, Kobleski is entitled to arbitrate her claims in the "same city as the U.S. District Court closest to [her] then current billing address," which presumably is the same location where she filed this Complaint.  Walters Decl., Ex. 1 at 12.  Any arbitration hearing thus will require no further travel than to this Court.

In sum, the Arbitration Agreement:  (A) reserves Kobleski's right to pursue any relief available under applicable law, including damages, injunctive and declaratory relief in arbitration; (B) authorizes the arbitrator to award Kobleski any relief available under applicable law, including attorneys' fees and costs; (C) provides that the arbitration will be conducted in the federal judicial district encompassing her residence; (D) preserves Kobleski's right to sue in small claims court; (E) provides her the ability to seek reimbursement of her filing fee and other expenses and requires Defendants to pay for the first day of any hearing; and (F) authorizes

5

arbitration before the AAA, which has adopted consumer-friendly rules, including regarding cost allocation. Walters Decl., Ex. 1 at 10-14.

### D. Credit Protector

On or about September 2, 2009, Kobleski enrolled by telephone in Credit Protector, an optional debt deferral/cancellation benefit program provided by Citibank. Walters Decl., ¶ 7. After enrolling, Kobleski was sent a Welcome Kit that contained, among other things, the terms and conditions governing Credit Protector. Id., & Ex. 3. Kobleski's enrollment in Credit Protector is subject to the Arbitration Agreement. Credit Protector "is an optional program that is an addendum to and is subject to the Card Agreement for the account shown above. In return for a fee and under the conditions described below, Citibank will defer or credit certain amounts on your Citibank account." Id., Ex. 3. As with the Card Agreement, the Credit Protector terms and conditions are between Kobleski and "Citibank (South Dakota), N.A., the issuer of your account." Id., Ex. 3. After Kobleski's Account became delinquent, her Credit Protector enrollment was cancelled in December 2009, and she filed for Chapter 7 Bankruptcy in April 2010. Walters Decl., ¶ 7.

## III. ARGUMENT

### A. Because A Valid Arbitration Agreement Exists Under The FAA And South Dakota Law, Kobleski Must Arbitrate Her Claims Against Defendants.

Because the transactions at issue -- charges made to a Citibank credit card account for the purchase of a debt deferral/cancellation benefit provided by Citibank -- clearly involve interstate commerce, the FAA provides the framework for determining the Arbitration Agreement's enforceability. See 9 U.S.C. § 2; Walters Decl., Ex. 1 at 11. Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. See, e.g.,

LA 51336261
QB\11885989.1

Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 277, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967). While the FAA creates a presumption of validity, arbitration agreements are subject to defenses (such as duress and fraud) under state law. See, e.g., Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987) (presumption of validity); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-27, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985); Bess v. Check Express, 294 F.3d 1298, 1306 (11th Cir. 2002) ("The FAA allows state law to invalidate an arbitration agreement, provided the law at issue governs contracts generally and not arbitration agreements specifically."). However, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985); French v. Wachovia Bank, No. 06-C-869, 2007 WL 895820, at *1 (E.D. Wis. Mar. 21, 2007) ("A district court 'must refer a dispute to an arbitrator 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'") (citations omitted).

By consenting to bilateral arbitration, the "parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp., __ U.S. __, 130 S. Ct. 1758, 1775, 176 L. Ed. 2d 605 (Apr. 27, 2010) (citations omitted). The "central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" Id. at 1773 (citations omitted); accord Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989); Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 53-54, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995).

"Underscoring the consensual nature of private dispute resolution . . . parties are

7

'generally free to structure their arbitration agreements as they see fit.'" <u>Stolt-Nielsen</u>, 130 S. Ct. at 1774 (citations omitted). It "is also clear from . . . the contractual nature of arbitration that parties may specify with whom they choose to arbitrate their disputes . . . . It falls to courts and arbitrators to give effect to these contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties." <u>Id.</u> at 1774-75; <u>EEOC v. Waffle House, Inc.</u>, 534 U.S. 279, 289, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002); <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002).

"To compel arbitration, a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." <u>Zurich Am. Ins. v. Watts Indus.</u>, 466 F.3d 577, 580 (7th Cir. 2006) (citing <u>Zurich Am. Ins. Co. v. Watts Indus., Inc.</u>, 417 F.3d 682, 690 (7th Cir. 2005) and <u>Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.</u>, 174 F.3d 907, 909 (7th Cir. 1999)); 9 U.S.C. § 4; <u>Hawkins v. Aid Ass'n for Lutherans</u>, 338 F.3d 801, 807 (7th Cir. 2003) (recognizing that "Because the adequacy of arbitration remedies has nothing to do with whether the parties agreed to arbitrate or if the claims are within the scope of that agreement, these challenges must first be considered by the arbitrator"); <u>Deputy v. Lehman Bros. Inc.</u>, No. 02-C-0718, 2004 WL 3770574, at *2 (E.D. Wis. Aug. 16, 2004); <u>Bruesewitz v. Wolpoff & Abramson, LLP</u>, No. 05-C-542-S, 2005 WL 3002609, at *2 (W.D. Wis. Nov. 8, 2005). The party resisting arbitration bears the burden of establishing that the arbitration clause at issue is invalid. <u>Battle v. Nissan Motor Acceptance Corp.</u>, No. 05-C-0669, 2007 WL 1095681, at *3 (E.D. Wis. Mar. 9, 2006); <u>see also</u> <u>Green Tree Fin. Corp.-Ala. v. Randolph</u>, 531 U.S. 79, 91, 121 S Ct. 513, 148 L. Ed. 2d 373 (2000))

Recognizing that federal law favors the enforcement of arbitration agreements as written, courts in this Circuit and others have enforced similar consumer arbitration agreements requiring individual arbitration. <u>See</u> <u>Livingston v. Assocs. Fin., Inc.</u>, 339 F.3d 553, 558-59 (7th Cir. 2003)

8

(enforcing arbitration agreement precluding class claims); <u>Battle</u>, 2007 WL 1095681, at *6

(enforcing arbitration agreement waiving class treatment).[2]  Numerous courts also have enforced

the arbitration agreements used by Citibank and its affiliates.  See <u>Hershler v. Citibank (South</u>

<u>Dakota), N.A.</u>, No. 2:08-cv-06363-R-JWJ, slip. op. at 3-8 (C.D. Cal. Dec. 19, 2008); <u>Taylor v.</u>

<u>Citibank USA, N.A.</u>, 292 F. Supp. 2d 1333 (M.D. Ala. 2003); <u>Dumanis v. Citibank (South</u>

<u>Dakota), N.A.</u>, No. 6:07-cv-6070 (CJS), 2007 WL 3253975, at *3 (W.D.N.Y. Nov. 2, 2007);

<u>Karmolinski v. Equifax</u>, Civ. No. 04-1448-AA, slip op. at 9 (D. Or. Oct. 27, 2005).[3]

## 1.     The Choice-Of-Law Provision Must Be Enforced.

A South Dakota choice-of-law provision expressly governs the Card Agreement for the

Account, which in turn contains the Arbitration Agreement.  Walters Decl., Ex. 1 at 14.  While

the FAA exclusively governs the enforceability of the Arbitration Agreement according to its

terms, South Dakota law governs the determination of whether a valid agreement to arbitrate

exists.  See <u>Gay</u>, 511 F.3d at 389 (citing numerous cases applying choice-of-law provisions to

determine applicable law in evaluating enforceability of arbitration agreements); <u>Dinsmore v.</u>

<u>Piper Jaffray, Inc.</u>, 593 N.W.2d 41, 44, 1999 SD 56 (S.D. 1999) ("the question of whether the

---

**2**  <u>See</u> <u>Gay v. CreditInform</u>, 511 F.3d 369, 383 (3d Cir. 2007); <u>Johnson v. West Suburban Bank</u>,
225 F.3d 366, 377-79 (3d Cir. 2000); <u>Adkins v. Labor Ready, Inc.</u>, 303 F.3d 496, 503 (4th Cir.
2002); <u>Snowden v. CheckPoint Check Cashing</u>, 290 F.3d 631, 638-39 (4th Cir. 2002); <u>In re</u>
<u>Cotton Yarn Antitrust Litig.</u>, 505 F.3d 274, 284 n.6 (4th Cir. 2007); <u>Carter v. Countrywide Credit</u>
<u>Indus., Inc.</u>, 362 F.3d 294, 298 (5th Cir. 2004); <u>Iberia Credit Bureau, Inc. v. Cingular Wireless</u>
<u>LLC</u>, 379 F.3d 159, 174-75 (5th Cir. 2004); <u>Caudle v. Am. Arbitration Ass'n</u>, 230 F.3d 920, 921
(7th Cir. 2000); <u>Pleasants v. Am. Express Co.</u>, 541 F.3d 853, 858-59 (8th Cir. 2008).

3  <u>Accord</u> <u>Citibank USA v. Howard</u>, No. 4:02CV64LN, 2002 WL 34573997, at *3 (S.D. Miss.
Aug. 30, 2002); <u>Ingram v. Citicorp Credit Servs., Inc. (USA)</u>, No. 05-2095 B/An, 2005 WL
6518077 (W.D. Tenn. July 11, 2005), mag recomm. adopted at <u>id.</u> (W.D. Tenn. Aug. 25, 2005);
<u>Koenick v. Citibank (South Dakota), N.A.</u>, No. AW-05-1006 (D. Md. June 7, 2005); <u>Sesto v.</u>
<u>Nat'l Fin. Sys., Inc.</u>, Case No. 04 C 7768, 2005 WL 6519430 (N.D. Ill. Apr. 25, 2005); <u>Barker v.</u>
<u>Citibank (South Dakota), N.A.</u>, No. A:03CA-130JN, Slip. Op., 2003 WL 25943008 (W.D. Tex.
May 30, 2003); <u>Fine v. Citibank (South Dakota), N.A.</u>, Case No. BC 284628 (Los Angeles Cty.
Sup. Ct., Cal. Sept 10, 2003); <u>Citibank (South Dakota), N.A. v. Walker</u>, No. A117770, 2008 WL
4175125, *3-7 (Cal. App. Ct. Sept. 11, 2008); <u>Frankel v. Citibank (South Dakota), N.A., et al.</u>,
No. 15516/08, at 2-6 (N.Y. Sup. Ct. Sept. 26, 2008).  Copies of the <u>Hershler</u>, <u>Koenick</u>, <u>Fine</u>,
<u>Frankel</u> and <u>Karmolinski</u> decisions are attached to the concurrently-filed Request for Judicial
Notice ("RJN") as Exhibits A through E.

9

parties entered into a valid agreement to arbitrate is a question for the court to determine applying state contract law principles"); accord First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

LA 51336261
QB\11885989.1

### a) The Arbitration Agreement Is Not Contrary To A Fundamental Wisconsin Public Policy.

Because this case is before this Court on federal diversity jurisdiction, Wisconsin's choice-of-law rules govern. See Tanner v. Jupiter Realty Corp., 433 F. 3d 913, 915 (7th Cir. 2006) ("When a district court sits in diversity, it must apply the choice of law principles of the forum state to determine which state's substantive law governs the proceeding.") (citations omitted); Cty. Materials Corp. v. Allan Block Corp., 431 F. Supp. 2d 937, 949 (W.D. Wis. 2006). Wisconsin follows Section 187 of the Restatement (Second) of Conflicts of Laws. "In Wisconsin, parties to a contract may agree that the law of a particular jurisdiction shall control their contractual relations unless upholding such an agreement would compromise an important public policy of the state whose law would otherwise apply." Diesel Service Co. v. Ambac Int'l Corp., No. 90-C-142-C, 1990 WL 358306, at *3 (W.D. Wis. Dec. 20, 1990) (citing Bush v. Nat'l Sch. Studios, Inc., 139 Wis.2d 635, 642, 407 N.W.2d 883, 886 (1987)). "The Wisconsin position is in accord with the generally accepted rule stated in § 187 of the Restatement (Second) Conflict of Laws." Diesel Service, 1990 WL 358306, at *3 n.6 (citing First Wisconsin Nat'l Bank of Madison v. Nicolaou, 85 Wis.2d 393, 398, 270 N.W.2d 582 (Wis. Ct. App. 1978) ("The Wisconsin policy of allowing the intention of the parties to determine the law applicable to contractual relations is in accord with the generally accepted rule, Restatement (Second), Conflict of Laws § 187")).

Applying Section 187 of the Restatement, Wisconsin courts enforce choice-of-law provisions so long as the chosen law does not contradict an important public policy of Wisconsin. See, e.g., Autotrol Corp. v. Continental Water Sys. Corp., 694 F. Supp. 603, 604 (E.D. Wis. 1988) ("Wisconsin gives effect to parties' contractual choice of law provisions unless to do so would infringe upon important state public policy"; enforcing Texas choice-of-law provision); Franchise Sys., Inc. v. Grahek, No. 03-C-276-C, 2003 WL 23162309, at *3 (W.D. Wis. Sept. 3, 2003) ("Wisconsin state contract law generally recognizes validly executed choice of law provisions provided there are no public policy reasons to disregard them"; enforcing

11

Minnesota choice-of-law provision).

Here, the South Dakota choice-of-law provision is enforceable because:  (i) South Dakota has a substantial relationship to the parties and the transaction (i.e., Citibank is located in South Dakota); and (ii) South Dakota law does not impair Kobleski's ability to enforce her rights. Moreover, both Wisconsin and South Dakota heavily favor arbitration, and both states recognize the defense of unconscionability.  See, e.g., Johnson v. John Deere Co., 306 N.W.2d 231, 237 (S.D. 1981) (unconscionability); Kemp v. Fisher, 89 Wis.2d 94, 100, 277 N.W.2d 859 (Wis. 1979) (recognizing Wisconsin's "policy of encouraging arbitration as an alternative to litigation").  Wisconsin courts have not held that class action waivers are contrary to a fundamental public policy where the class action mechanism is not necessary to ensure that consumers are able to vindicate their rights.  Wisconsin courts have reasoned that class action waivers only are a "significant factor" pointing toward unconscionability where consumers would be unable to enforce their rights under the Wisconsin Consumer Act (the "WCA").  See Cottonwood Fin., Ltd. v. Estes, 325 Wis.2d 749, 765, 784 N.W.2d 726, 734 (Wis. Ct. App. 2010).

Kobleski has effective means of vindicating her rights -- she can sue in small claims court or file an individual arbitration.  Both small claims procedures and consumer arbitration with the AAA are affordable, streamlined and fair.  Under AAA rules for consumer arbitrations, for example, Conroy's arbitration fees would be capped at $125 for an actual damages claim not exceeding $10,000 and $375 for an actual damages claim between $10,000 and $75,000.  See http://www.adr.org/sp.asp?id=22039 (last visited Oct. 25, 2010).  She also may claim other amounts, including attorneys' fees, without paying increased fees.  See id.  Under both the Arbitration Agreement and the AAA's rules, Kobleski may seek a waiver of the filing fee, and may seek reimbursement of the filing fee if she prevails.  See id.; Walters Decl., Ex. 1 at 13.  In comparison, this Court's filing fee is $350, the circuit court's fee is $265 for actions over $5,000 and $94.50 for small claims actions.  See http://www.wied.uscourts.gov/index (last visited Nov.

12

8, 2010) and http://www.wicourts.gov/about/filing/index.htm (last visited Nov. 8, 2010).
Kobleski also is capable of recognizing the alleged wrong -- that she supposedly did not enroll in
Credit Protector but was billed for it -- without counsel.  Thus, nothing inhibits Kobleski from
vindicating her rights without a class action.  Furthermore, when Kobleski received her Card
Agreement, she had not enrolled in Credit Protector.  Thus, when she assented to arbitration, she
had no claims against Defendants and was not foregoing litigation of her WCA claims.  See
Bruesewitz, 2005 WL 3002609, at *4 (reasoning that "an unconscionability analysis is properly
determined as of the time the agreement was made and is limited to consideration of the
arbitration agreement").

Wisconsin Auto Title Loans, Inc. v. Jones, 290 Wis.2d 514 (Wis. 2006), Cottonwood,
325 Wis.2d at 765, 784 N.W.2d at 734, and Coady v. Cross Country Bank, 299 Wis.2d 420, 450,
729, 746 N.W.2d 732 (Wis. Ct. App. 2007), do not alter this conclusion.  Those courts reasoned
that, taken with other factors, a class action waiver could be unconscionable where it prevented
plaintiffs from pursuing remedies under the WCA.  However, the Wisconsin Supreme Court in
Wisconsin Auto Title court emphasized that unconscionability is a factual inquiry, and must be
determined "on a case-by-case basis."  Wisconsin Auto Title, 290 Wis.2d at 532-35.
Furthermore, Wisconsin Auto Title and Cottonwood involved contracts that selected Wisconsin
law, and thus did not conduct a choice-of-law analysis as to another state's law.  Coady declined
to enforce a Delaware choice of law provision on the ground that it required plaintiffs to pursue
only Delaware claims and precluded assertion of WCA claims in litigation or arbitration,
invalidating the choice of law provision as to the entire contract.  Coady, 299 Wis.2d at 438, 729
N.W.2d at 740-41.  However, Coady did not reason that Wisconsin's authorization of class
actions embodies such a fundamental public policy that it justifies disregarding the parties'
choice of law.  Coady sought to ensure that consumers have access to remedies for the
misconduct alleged.  Because the Arbitration Agreement here preserves Kobleski's ability to
seek relief, it does not contravene Wisconsin public policy.  Coady, 299 Wis.2d at 450, 729

13

N.W.2d at 746.

        **b)**       **Wisconsin Does Not Have A Materially Greater Interest Than South Dakota In Applying Its Law.**

Even if the Court were to proceed to Section 187's third step, Wisconsin does not have a materially greater interest in applying its law here than South Dakota law or federal law.  See Hershler, No. 2:08-cv-06363-R-JWJ, slip. op. at 6-7 ("South Dakota, where Citibank is located, has a compelling interest in applying its laws to regulate businesses operating within its borders, while the bank has an equally compelling need to ensure that its transactions are governed by a common set of laws . . . ."); Ventura v. 1st Financial Bank USA, No. C 03-4515 JF (RS), 2005 WL 2406029, at *5 (N.D. Ca. Sept. 29, 2005) ("California does not have a materially greater interest in the action than South Dakota").  South Dakota has an equally compelling interest in applying its law here.  S.D. Codified Laws § 51A-12-12 ("A revolving loan account arrangement between a bank located in the state of South Dakota and a debtor shall be governed by the laws of the state of South Dakota."); Mackey v. MBNA Am. Bank, N.A., 343 F. Supp. 2d 966, 969-70 (W.D. Wash. 2004) (recognizing that Delaware's interest in applying its own law to banks in its state outweighed Washington's interest); accord Lloyd v. MBNA Am. Bank, N.A., No. 01-1752, 27 Fed. App'x 82, 84, 2002 WL 21932 (3d Cir. Jan. 7, 2002); Hill v. Equitable Trust Co., 562 F. Supp. 1324, 1335 (D. Del. 1983); Edelist v. MBNA Am. Bank, 790 A.2d 1249, 1256 (Del. Super. Ct. 2001).

South Dakota Codified Laws § 51A-12-12 is a forceful legislative pronouncement that South Dakota's interests in applying its law to transactions between account holders and banks in South Dakota is paramount to application of other states' laws.  Furthermore, because Citibank is a national bank, it has a heightened interest in applying a uniform set of laws to govern its transactions with its account holders nationwide.  Indeed, "[p]robably the most important function of choice-of-law rules is to make the interstate and international systems work well." Restatement (Second) Confl. Of Laws § 6, cmt. d.  As this Court previously found in Hershler on

14

the same issue:

> Even more so than other interstate businesses, the national banking system fundamentally depends on allowing national banks to operate under a uniform set of laws . . . . [I]t would make little sense for a court to require application of 50 states' laws (including various state statutes, regulations, judicial decisions, and common law) on something as fundamental to the banking business as which state's contract law will apply. Put differently, because preemptive federal law exclusively governs and regulates the lending operations of national banks, like Citibank, California has no greater interest than a national bank's home state with respect to the terms of consumer credit contracts.

Hershler, No. 2:08-cv-06363-R-JWJ, slip. op. at 7-8.

### c) South Dakota Law Determines The Arbitration Agreement's Validity.

The Arbitration Agreement is enforceable under South Dakota law. South Dakota, like most states, strongly endorses arbitration. "If there is doubt whether a case should be resolved by traditional judicial means or by arbitration, arbitration will prevail." Rossi Fine Jewelers, Inc. v. Gunderson, 648 N.W.2d 812, 814 (S.D. 2002) ("We have consistently favored the resolution of disputes by arbitration. . . . There is an overriding policy favoring arbitration when a contract provides for it."); Dinsmore, 593 N.W.2d at 44-45, 47 (enforcing arbitration agreement in preprinted securities account agreement); Westhoff v. Citibank (South Dakota), N.A., Case No. CIV 05-288 (Cir. Ct. 2d Jud. Cir., S.D. May 5, 2005).[4] This "overriding" public policy also is confirmed by a May 7, 2002 Letter Opinion from the South Dakota Assistant Attorney General to the South Dakota Director of Banking (the "South Dakota Attorney General Opinion"):

> "The purpose of arbitration is to permit a relatively quick and inexpensive resolution of contractual disputes by avoiding the expense and delay of extended court proceedings." Tjeerdsma v. Global Steel Bldgs., Inc., 466 N.W.2d 643 (S.D. 1991), quoting L.R. Foy Constr. Co. v. Spearfish School District, 341 N.W.2d 383, 388 (S.D. 1983) (Henderson, J., specially concurring) (citations omitted). South Dakota law, like federal law and the law of most states, encourages private parties to resolve both existing and future disputes by extra-judicial means such as arbitration. "A strong policy exists favoring the arbitration

---

[4] A copy of Westhoff is attached to the RJN as Exhibit F.

15

of disputes where the parties have bargained for this procedure." <u>City of Hot Springs v. Gunderson's, Inc.</u>, 322 N.W.2d 8 (S.D. 1982).[5]

Here, Kobleski validly entered into the Arbitration Agreement. Kobleski voluntarily used her account following receipt of the Card Agreement. Walters Decl., Ex. 2. By doing so, she assented to the Card Agreement's terms, including the Arbitration Agreement. <u>See</u> S.D. Codified Laws § 54-11-9 ("The use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer . . . ."); <u>Hurley State Bank v. Moore</u>, No. 3:01-CV-158BN, at 6 (S.D. Miss., July 2, 2001)[6] (enforcing, pursuant to South Dakota law, arbitration amendment to credit card agreement); South Dakota Attorney General Opinion; <u>see also</u> <u>Tinder v. Pinkerton Security</u>, 305 F.3d 728, 736 (7th Cir. 2002) (applying Wisconsin law, employee bound herself to employer's arbitration policy where employee continued to work after arbitration policy became effective); <u>Eaves-Leonos v. Assurant, Inc.</u>, 3:07-CV-18-S, 2008 WL 80173, at *6 (W.D. Ky. Jan. 8, 2008). The Arbitration Agreement expressly permits either party to elect mandatory, binding arbitration for any claim, dispute, or controversy between the parties, and Defendants properly choose to do so. There thus can be no dispute that Kobleski validly entered into the Arbitration Agreement.

### 2. The Complaint's Claims Are Within The Arbitration Agreement's Scope.

Once a court determines that the parties have entered into a binding arbitration agreement, "[an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." <u>See</u> <u>AT&T Techs., Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) (citation omitted); <u>Becker Autoradio U.S.A.</u>,

---

[5] A copy of the South Dakota Attorney General Opinion is attached to the RJN as Exhibit G.

[6] A copy of <u>Moore</u> is attached to the RJN as Exhibit H.

16

Inc. v. Becker Autoradiowerk GmbH, 585 F.2d 39, 44, 46 (3d Cir. 1978) (holding that an arbitration provision including the phrase "arising out of and about" encompasses matters that "[arise] in the course of and during the on-going relationship . . . created and governed" by the contract containing the arbitration provision); Oldroyd v. Elmira Savs. Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998) (holding that a clause requiring the arbitration of "[a]ny dispute, controversy or claim arising under or in connection with" an employment agreement was "prototypica[lly] broad" and "justifies a presumption of arbitrability").

The Arbitration Agreement mirrors this broad language: "**Broadest interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced." Walters Decl., Ex. 1 at 11. The Arbitration Agreement applies despite the legal theory attached to a claim. Id. The instant dispute arises from Kobleski's enrollment in Credit Protector, a product to defer or cancel debt on her account. Complaint, ¶¶ 1, 14, 21, 29, 30, 61-65. The Complaint's claims are tied to her Account -- charges billed to her Account and deferral of debt on her account -- and her relationship with Citibank. Id. Kobleski challenges Citibank's Credit Protector disclosures and its billing of her Account for Credit Protector. Id. Indeed, the Credit Protector terms and conditions expressly provide that they are an addendum to the Card Agreement. Walters Decl., Ex. 3. Furthermore, although they did not issue Kobleski's Account, the Arbitration Agreement's express terms require arbitration of Kobleski's claims against affiliated companies such as Citigroup Inc. and Citicorp: "Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as . . . an . . . affiliated company." Id., Ex. 1 at 13 ("corporate affiliates are here considered as one person"). See Gowdy v. Citibank Universal Card Servs. Corp., No. 02-1828CI-8 (Cir. Ct. 6th Dist., Pinellas Cty. Fla. May 5, 2003) (compelling arbitration of claim against affiliated company). [7]

---

[7] A copy of the Gowdy decision is attached to the RJN as Exhibit I.

LA 51336261
QB\11885989.1

**B.      The Arbitrator Must Hear Kobleski's Claims On An Individual Basis.**

The Court also must enforce the Arbitration Agreement as it is written, with clear language requiring arbitration on an individual basis.  "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  Howsam, 537 U.S. at 83 (internal quotation marks and citation omitted); EEOC, 534 U.S. at 289 ("[N]othing in the [FAA] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement."); Stolt-Nielsen, 130 S. Ct. at 1775 (holding that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so") (emphasis in original).

By using her Account, Kobleski assented that:  "Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis."  Walters Decl., Ex. 1 at 11.  The Arbitration Agreement confers on the arbitrator only the authority to decide individual claims, and not to make any award, or consider any claims, by or relating to any other person.  Id., Ex. 1 at 13. This language unequivocally demonstrates the parties' intent to arbitrate claims only on an individual basis.  See Stolt-Nielsen, 130 S. Ct. at 1776.

Furthermore, the FAA preempts state laws that attempt to regulate the arbitration process or dictate the terms of, and parties to, arbitration.  Volt Info. Scis., 489 U.S. at 477; Southland Corp. v. Keating, 465 U.S. 1, 16, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984) (striking down California law that sought to insulate certain issues from arbitration); Battle, 2007 WL 1095681, at *4-5 (holding that FAA preempted the WCA with respect to arbitration agreement); see also Hasbro, Inc. v. Catalyst USA, Inc., 367 F.3d 689, 692 (7th Cir. 2004) ("'[A]rbitration agreements [are] enforceable to the same extent as other contracts, so courts must enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.'") (quoting Volt Info. Scis., 489 U.S. at 478).  A requirement that arbitration agreements make class arbitration

18

available does not concern contracts generally but rather targets arbitration agreements in particular. An arbitration agreement that would otherwise be valid under general contract principles cannot be rendered invalid because the contract bars class treatment. See Omni Tech Corp. v. MPC Solutions Sales, LLC, 432 F.3d 797, 799, 800 (7th Cir. 2005) ("Arbitration enjoys special protection under federal law; states may not adopt anti-arbitration rules for contracts in or affecting interstate commerce").

**C. The Court Should Stay The Action Pending Arbitration On An Individual Basis.**

Because all of Kobleski's claims are within the arbitration agreement's scope, the action should be stayed pending the arbitration's conclusion. See 9 U.S.C. § 3 (providing that court shall stay the action "until such arbitration has been had in accordance with the terms of the agreement"); Seus v. John Nuveen & Co., Inc., 146 F.3d 175, 179 (3d Cir. 1998) ("If a party to a binding arbitration agreement is sued in a federal court on a claim that the plaintiff has agreed to arbitrate, it is entitled under the FAA to a stay of the court proceeding pending arbitration."); Kroll v. Doctor's Assocs., Inc., 3 F.3d 1167, 1171 (7th Cir. 1993) (FAA "'plainly requires that a district court stay litigation where issues presented in the litigation are the subject of an arbitration agreement'") (citation omitted).

**D. Alternatively, This Court Properly May Stay This Case Pending Action By The Supreme Court.**

A consistent line of Supreme Court authority favors permitting parties to structure arbitration as they wish and enforcing arbitration agreements as written, including recent decisions. See Stolt-Nielsen, 130 S. Ct. at 1776 (holding that imposing class arbitration on parties who have not agreed to authorize class arbitration is inconsistent with the FAA); Rent-A-Center, West, Inc. v. Jackson, ___ U.S. ___, 130 S. Ct. 2772, 2779, 177 L. Ed. 2d 403 (Jun. 21, 2010) (holding that where agreement required arbitrator to determine arbitration agreement's

19

enforceability, question was for arbitrator, not court). The Supreme Court also vacated and remanded a Second Circuit decision, American Express Co. v. Italian Colors Restaurant, __U.S.__, 130 S. Ct. 2401, 176 L. Ed. 2d 920, 2010 WL 1740528 (May 3, 2010), which held an arbitration agreement that required individual arbitration unenforceable, for reconsideration in light of Stolt-Nielsen. Under these authorities, courts should not decline to enforce otherwise valid arbitration agreements simply because of a belief that the unavailability of class treatment might make it more challenging for one party to pursue his or her claims. Even more significantly, the Supreme Court granted certiorari in AT&T Mobility LLC v. Concepcion, No. 09-893, 130 S. Ct. 3322, 2010 WL 303962 (May 24, 2010), expressly to determine: "Whether the Federal Arbitration Act preempts States from conditioning the enforcement of an arbitration agreement on the availability of particular procedures -- here, class-wide arbitration -- when those procedures are not necessary to ensure that the parties to the arbitration agreement are able to vindicate their claims."[8]

AT&T Mobility has direct bearing on whether the Arbitration Agreement here should be enforced as written. If the Court does not grant the Motion, it should stay the action pending a decision in AT&T Mobility. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." Landis v. North Am., Inc., 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936). In considering a stay request, courts balance the needs of the moving party against the consequence of delay to the opponent. Landis, 299 U.S. at 256.

Here, the balance favors Citibank because to require litigation irreparably deprives Citibank of its right to arbitrate and forces them to expend time and resources in court procedures that arbitration avoids. The putative class's claims are fundamentally monetary in nature and can be remedied through monetary damages without any irreparable injury. On the other hand,

---

[8] A copy of the Petition for a Writ of Certiorari in AT&T Mobility is attached to the RJN as Exhibit J.

LA 51336261
QB\11885989.1

absent a stay (or an order granting the Motion), the parties and this Court would incur the significant burden and expense of pre-certification discovery and other litigation activities that arbitration is designed to avoid.  Indeed, Citibank would be irreparably harmed because it would lose the benefits of arbitration and its lower cost, incurring expenses that likely would not be recoverable.

Following the grant of certiorari in <u>AT&T Mobility</u>, numerous courts have stayed actions where arbitration agreements were at issue.  <u>See, e.g.</u>, <u>Litman v. Cellco P'ship</u>, No. 08-4103 (3d Cir. July 7, 2010) (order staying mandate);[9] <u>McArdle v. AT&T Mobility LLC</u>, No. C 09-1117 CW, 2010 WL 2867305 (N.D. Cal. July 20, 2010); <u>Kaltwasser v. Cingular Wireless LLC</u>, No. C 07-00411 JF (PVT), 2010 WL 2557379 (N.D. Cal. June 21, 2010); <u>Carney v. Verizon Wireless Telecom, Inc.</u>, No. 09-cv-1854 DMS (AJBx), 2010 WL 3058106 (S.D. Cal Aug. 2, 2010).  Indeed, in a similar action involving Citibank's Credit Protector benefit, <u>Devavani Conroy v. Citibank, N.A. and Citibank (South Dakota), N.A.</u>, 2:10-cv-04930-SVW-AJW (C.D. Cal.), the District Court granted Defendants' request to stay the action pending the outcome of <u>AT&T Mobility</u>.  A stay also is appropriate here.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the Motion and order Kobleski to arbitrate her claims on an individual basis, and stay this action pending conclusion of arbitration.  In the alternative, Defendants request a stay pending a decision by the United States Supreme Court in <u>AT&T Mobility</u>.

---

[9] A copy of <u>Litman</u> is attached to the RJN as Exhibit K.

LA 51336261
QB\11885989.1

Dated:  November 30, 2010

By:  \_\_/s/Valerie L. Bailey-Rihn \_\_\_\_\_
Valerie L. Bailey-Rihn
State Bar No. 1000728
QUARLES & BRADY LLP
33 East Main Street
Suite 900
Madison, WI 53703
Telephone: (608) 251-5000
Facsimile: (608) 251-9166

*Counsel for Defendants*


*Of Counsel*:

STROOCK & STROOCK & LAVAN LLP
Julia B. Strickland
Scott M. Pearson
2029 Century Park East
Los Angeles, CA. 90067
Telephone:  (310) 556-5800
Facsimile:  (310) 556-5959

22